UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES M. BADGER; MARCUS A. BENJAMIN;
SEAN P. BYRNES; CHELSIE L. DEPERUTO;
KRISTYN V. DRAKE; JEFFREY M. FITTS;
PENNY L. GUERRER; CHRISTOPHER
L. HATFIELD; SAVANNA L. HILKER;
CHADD T. HINES; BRADLEY N. LAMAN;                    No. 5:23-CV-0844
KIMBERLY A. LAWRENCE; ERIC B.                        (GTS/MJK)
PERINE; SETH D. ROWLAND; KEVIN J.
SCIARRINO; MELISSA M. TAYLOR; and
TYLER G. ZACCK,

                                        Plaintiffs,

v.

CITY OF CORTLAND,

                                        Defendant.
_____

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

 Before the Court is the motion of City of Cortland ("Defendant" or "the City") to partially to

dismiss the Amended Complaint of the 17 above-captioned individuals ("Plaintiffs").  See dkt. # 28.

The parties have briefed the issues, and the Court has determined to decide the matter without oral

argument.  For the reasons set forth below, Defendant's motion is denied.

**I. RELEVANT BACKGROUND**

 Generally, this case involves claims by Plaintiffs, who are City of Cortland Police Officers,

that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., by failing

to calculate pay rates properly in various ways.  See Amended Complaint ("Amend. Cmplt."), dkt. #

24.  In support of these claims, Plaintiffs allege as follows.

Defendant and the Cortland Police Benevolent Association have a Collective Bargaining Agreement ("CBA").  Id. at ¶ 9.  The CBA provides that Defendant will pay 84% of the cost of health insurance provided to each employee covered by the agreement.  Id. at ¶ 10.  Employees who opt into the insurance coverage must pay the remaining 16% of that cost.  Id.  Defendant pays Blue Cross Blue Shield, the insurer, for employee health coverage.  Id. at ¶ 11.  Plaintiffs and others in their position have the option to receive health insurance in this way.  Id. at ¶ 12.

The CBA also provides workers like Plaintiffs with the ability to opt out of the health insurance coverage.  Id. ¶ 14.  Such workers must have "other health care coverage through their spouses or parent's employer, or for other reasons."  Id. at ¶ 14.  An employee who opts out of health-care coverage receives a cash payment from Defendant.  Id. at ¶ 15.  An eligible employee who is married and opts out of family coverage receives $5,000 annually from Defendant.   An eligible worker who is not married and opts out of single coverage receives a $2,500 annual payment.  Id.  Defendant pays this money directly to the employee who opts out.  Id. at ¶ 16.  Plaintiffs have opted out on their health-care coverage and received cash from Defendant.  Id. at ¶ 17.

When Defendant calculates Plaintiffs' regular rate of pay for the purpose of calculating overtime pay, Defendant excludes these opt-out payments.  Id. at ¶ 18.  Plaintiffs have worked overtime, and Defendant's calculation of pay rates "did not include the cash in lieu of benefits payments because Defendant failed to include them in Plaintiffs' regular rate of pay."  Id. at ¶ 22.  Plaintiffs claim that Defendants acted knowingly, voluntarily and deliberately in failing to pay the proper overtime rate.  Id. at ¶¶ 23-24.

Plaintiffs further allege that they received other payments beyond their usual salaries for

service such as "being on-call, longevity pay, shift differentials, K9 stipends, and retroactive pay increases." Id. at ¶ 25. Plaintiffs allege that Defendant also failed to include these payments in calculating Plaintiffs' regular pay rate for calculating overtime pay. Id. For example, Plaintiffs allege that Defendant failed to include a retroactive pay increase awarded in June 2022 when calculating pay rates for the purpose of paying overtime. Id. at ¶¶ 26-29. Plaintiffs allege that they were also entitled to receive $68 per day when they worked "on-call." Id. at ¶ 30. Plaintiffs allege that Defendant failed to include this pay in calculating overtime rates during weeks that Plaintiffs received such pay. Id.

Based on these factual allegations, Plaintiffs' Amended Complaint asserts two counts. Count I claims that Defendant violated Section 207(a) of the FLSA by failing to include the opt-out payments in calculating Plaintiffs' pay rates for overtime purposes. Plaintiffs claim that this violation was "systemic, continuing, willful, and purposeful[.]" Id. at ¶ 37. Count II claims that Defendant failed to calculate the regular rate of pay properly by not including various other forms of compensation beyond direct salary, such as payments for being on-call, caring for K9s, and longevity pay. Plaintiffs claim that this practice also violates Section 7(a) of the FLSA. Finally, Plaintiffs claim that this conduct was knowing, willful, and purposeful. Id. at ¶ 45.

Defendant has filed a motion to dismiss Count I of the Amended Complaint. The parties have briefed the issues, leaving the case in its present posture.

## II.    GOVERNING LEGAL STANDARD

Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). A defendant moving for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) argues that the plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and

draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.    ANALYSIS

Defendant seeks dismissal of Count I on several grounds, which the Court will address in turn.

### A.    Statute of Limitations

Defendant opens its brief by arguing that Plaintiffs have failed to plead facts plausibly suggesting that they complied with the two or three-year statute of limitations governing FLSA claims.  For example, Defendant contends that the Complaint does not contain allegations concerning when the actions giving rise to Plaintiffs' claims occurred.  Defendant therefore argues that the Court should either dismiss the Complaint for failure to state a claim or order Plaintiffs to provide a more definite statement concerning the times on which their claims accrued.

Plaintiffs respond that the Amended Complaint avers that Defendant's alleged violations are continuing ones that occur whenever Defendant calculates an overtime rate and underpays a Plaintiff.  Plaintiffs also contend that they have alleged willful violations, which extends the basic two-year statute of limitations on FLSA claims to three years.

In reply, Defendant withdraws its argument that Plaintiffs have failed to plead that they have complied with the statute of limitations (because Plaintiffs have acknowledged that their claims will only date back until two years before the Complaint was filed, or three years if the Court finds

willfulness).  At the same time, Defendant argues that any claims that accrued more than three years before Plaintiffs filed their Complaint are time-barred and should be dismissed.  Moreover, Defendant "reserv[es] its right to assert this defense should facts reveal a lack of willfulness, thereby shortening the limitations permit to two years."

"Claims for unpaid overtime compensation under the FLSA are generally subject to a two-year statute of limitations."  Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 318 (2d Cir. 2021) (citing 29 U.S.C. § 255(a)).  If the alleged violations are willful, the statute of limitations becomes three years. Id.  In most cases, a defendant "must plead and prove" a statute-of-limitations defense, because the defense is an affirmative one.  Id. at 319.  Still, "'a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" Id. (quoting Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008)).  Courts can grant a motion to dismiss a complaint on statute-of-limitations grounds "'[i]f [the] complaint clearly shows the claim is out of time." Id. (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)).

The Court denies this aspect of Defendant's motion for two alternative reasons. First, the Court finds that Defendant has effectively abandoned this argument to the extent it challenges that portion of this claim that is based on events allegedly occurring two to three years before the Complaint was filed (depending on willfulness). Second, in any event, the Court rejects this aspect of Defendant's motion on the merits.  The Amended Complaint describes the CBA between the parties and the opt-out payments that Plaintiffs allege they received.  Amend. Cmplt. at ¶¶ 9-15.  Using the present tense, the Amended Complaint further alleges that "Plaintiffs and all others similarly situated have been exercising their option to receive the cash back payment for the unused portion of their medical benefits." Id. at ¶ 17.  Further, the Amended Complaint alleges that "[t]he City excludes the

cash in lieu of benefits payments when it calculates the Plaintiffs' regular rates of pay for purposes of paying the Plaintiffs' overtime compensation." Id.  Finally, the Amended Complaint alleges that the payments occurred "during at least the last three years."  Id. at ¶ 25.   Drawing all reasonable inferences in Plaintiffs' favor, the Court finds that this language plausibly suggests that at least some portion of the alleged FLSA violations allegedly occurred within the past three years and that the practice giving rise to the claims is ongoing.  While discovery will be necessary to determine exactly when any violations occurred, particularly when calculating any damages, the Court cannot find that the Amended Complaint clearly shows that the claims are out of time.  (Of course, Defendant will be permitted to file a motion for summary judgment on statute-of-limitations grounds if discovery reveals that the evidence shows Plaintiffs have failed to meet the statute of limitations.)

**B.      Calculation of Hourly Rate Based on Opt-out Payments Under 29 U.S.C. § 207(e)(2)**

Defendant next argues that the Court should dismiss Plaintiffs' claim related to the use of the opt-out payments in calculating overtime.[1]  Defendant contends that it properly excluded that pay pursuant to a potion of the FLSA that defines what types of payments must be included in calculating

---

[1]      Federal law provides, in pertinent part, as follows:

> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a).  There is no dispute in this case that the portion of the statute that provides for pay at 1.5X that regular rate for overtime applies to Plaintiffs in this case.  This case concerns the "regular rate" upon which overtime is calculated.

Plaintiffs' "regular rate," and thus the rate for overtime pay.  In support of this contention, Defendant points to two separate provisions of the FLSA, which the Court will address in turn.

### 1.    29 U.S.C. § 207(e)(2)

As a general matter, "[u]nder the FLSA, employees who work more than 40 hours per week must be compensated for each hour worked over 40 'at a rate not less than one and one-half times the regular rate at which he is employed.'"  Young v. Cooper Cameron Corp., 586 F.3d 201, 204 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)).  Though the FLSA is a "remedial" statute, the Supreme Court has rejected the idea that exemptions in the statute should be read narrowly to reflect that purpose and instead determined that courts should give such exemptions "a fair reading."  Encino Motors, LLC v. Navarro, 584 U.S. 79, 89 (2018).   Still, "[t]he burden of invoking these exemptions rests upon the employer."  Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002)

Defendant therefore has the burden of demonstrating that an exemption applies and allows it to calculate Plaintiffs' overtime rate without including the payments in lieu of benefits.  To meet this burden, Defendant points to 29 U.S.C. § 207(e)(2), which provides as follows:

> (e) "Regular rate" defined. As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
> . . .
>> (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

29 U.S.C. § 207(e)(2).  Specifically, Defendant points to the phrase, "other similar payments to an

employee which are not made as compensation for his hours of employment" to support its argument that  "courts interpret § 207(e)(2) to exclude the cash in lieu of benefits payments at issue here."

Defendant acknowledges that courts in the Second Circuit have not addressed this issue, but points to cases from the Seventh and Third Circuit Courts of Appeals that purportedly support this interpretation of the statute.  Relying on these cases, Defendant contends the cash payments here do not depend on how many hours Plaintiffs worked or how much work they did, but instead depend on whether Plaintiffs chose to be included in the employer-provided health care.  Such payments, Defendant contends, are therefore not payments made in compensation for hours worked.  In response, Plaintiffs agree that the issue has not been addressed in the Second Circuit, and instead point to a Ninth Circuit case they contend offers a more direct and clearer analysis of the issue.  In reply, Defendant argues that a combination of the statute's plain language and public policy concerns should compel this Court–in a matter of first impression in this Circuit–to adopt the position that the payments in lieu of benefits are not compensation for hours worked.

Recognizing that the Second Circuit Court of Appeals has not established binding precedent on the issue in this Circuit, the Court will examine the cases cited by the parties in detail as an aid to consideration of this issue.  As stated above, Defendant, which has the burden on the issue, points to two cases that allegedly support its argument (one from the Seventh Circuit and the other from the Third Circuit).  Plaintiffs point to one case from the Ninth Circuit.  The Court will address the cases in detail in turn.

Defendant cites to Reich v. Interstate Brands Corp., 57 F.3d 574 (7th Cir. 1995), for the proposition that Section 207(e)(2) "excludes 'payments that do not depend at all on when or how much work is performed.'"  Defendant's Brief in Support of Motion to Dismiss, dkt. # 28-1, at 7

(citing Reich, 57 F.3d at 578).   Reich addressed a situation concerning bakery workers who, after a strike ended in a compromise, received "higher wages, [but] employees retained their right to work without consecutive days off–but employers have to pay a price for exercising the privilege." Reich. 57 F.3d at 575.  When an employer requires work on "a schedule that does not include two consecutive days off in a given week," that employer "must pay $12 per worker per week into a fund." Id.  "In November of each year the employer distributes these 'earned work credits' . . . to all workers still on the payroll, according to the number of weeks each went without two-day breaks." Id.  The collective bargaining agreement, signed in 1972, "provide[s] that these $12 credits are not compensation for work performed but are 'penalties' designed to induce employers to provide consecutive days off." Id.  That agreement sets out that "the payments are not part of the base wage on which overtime pay is calculated." Id.  Until 1991, the Department of Labor "apparently accepted that understanding" and did not challenge the payment structure. Id.  "In 1991, however, the Secretary reversed course and filed this suit, contending that the $12 payments are part of the employees' 'regular rate' for purposes of § 7(a)(1) of the" FLSA. Id, The district court agreed with the Secretary and "entered an injunction requiring [defendant] to treat the $12 payments as part of the employees' regular compensation." Id.  The Seventh Circuit in Reich affirmed the decision of the district court, which enjoined the defendant "from treating 'earned work credits' as 'other similar payments' under 28 U.S.C. Section 207(e)(2) exempt from calculation as part of the 'regular rate of pay' and the overtime rate of pay." Id. at 578.

In doing so, the Seventh Circuit analyzed this payment in light of Section 7(e), noting that the statute "defines the 'regular rate' to include 'all remuneration for employment paid to, or on behalf of, an employee.'" Id. at 576 (quoting 29 U.S.C. § 7(e)).  Further, "[t]he $12 credit, whether or not

designed as a 'penalty,' is 'remuneration for employment' and counts unless it comes within one of" the exemptions in Section (7)(e).  The defendant in <u>Reich</u> argued that the $12 payment constituted "'payment[] to an employee which [is] not made as compensation for his hours of employment.'" <u>Id.</u> (quoting 29 U.S.C. § 7(e)(2)).  The Seventh Circuit rejected the Secretary's argument that "the $12 credit is 'compensation for . . . hours of employment' because it goes to bakers who work six-day weeks."  <u>Id.</u>  "That simply misunderstands the arrangement[,]" the Seventh Circuit reasoned, because "[t]he payment is due whenever the work schedule fails to provide consecutive days off."  <u>Id.</u>  A worker could have a forty-hour schedule and still receive the $12 credit if that schedule did not include two consecutive days off.  <u>Id.</u>  "This difference in compensation for schedules that have the same number of days and hours per week is the foundation of the bakery's argument," the Seventh Circuit noted.  <u>Id.</u>  It also rejected the Secretary's argument that the payments to bakers were not "similar" to the other sorts of payments covered in Section 7(e)(2), such as vacation and sick pay or traveling expenses, because if the payments were similar to such payments they would need to be "'rare' or at least 'infrequent,'" and the $12 payments were "a credit that applies to a majority of employee weeks."  <u>Id.</u>  The other types of payments covered by the Section, the Seventh Circui concluded, were likewise not infrequent.  <u>Id.</u>

While the Seventh Circuit rejected the Secretary's version of Section 7(e)(2), it was also "not exactly bowled over by the" defendant's version.  <u>Id.</u> at 577.  The Seventh Circuit found that defendant "wants us to disregard 'similar' and exclude from § 7(e) any payment 'not made as compensation for . . . hours of employment,' which the bakery understands to mean 'not measured by the hours spent at work.'"  <u>Id.</u>  As the Seventh Circuit explained,

If Interstate Brands is right, then employers can evade the overtime

requirements with ease.  Imagine this compensation system: $52 (paid at year's end) for every day on which work is scheduled, plus the minimum wage for every hour actually worked.  If the minimum wage is $3.50, this system produces $80 ($10 per hour) for an ordinary 8-hour day.  It also yields an overtime rate of $5.25 per hour, roughly *half* of the average hourly wage rather than one and half times the average wage.[2]  Interstate Brands chose a lower flat payment ($12 per week rather than $52 per day), but if the former is exempt under § 7(e)(2), then the latter has a good claim to equal treatment.  Yet if the latter is an implausible understanding of the FLSA, why is Interstate Brands' system exempt?

Id.  Moreover, the Seventh Circuit found, Section 7(e)(2) is not the only exemption stated in the statute, and "a glance at a few of the others shows that §7(e)(2) cannot possibly exclude every payment that is not measured by the number of hours spent at work."  Id.  Some year- end bonuses are "independent of the number of hours worked," yet such bonuses under Section 7(e)(3)(a) "must be included in the 'regular rate' unless [they are] entirely discretionary with the employer[.]"  Id.  In general, the Reich court concluded, "we hesitate to read § 7(e)(2) as catch all, one that obliterates the qualifications and limitations on the other subsections and establishes a principle that all lump-sum payments fall outside the 'regular rate.'"  Id. at 578.

The Seventh Circuit compared the $12 credits, for which "the right to receive them is tied to work schedules that employees dislike . .. to premium wages for working weekends, or the night shift, or in noisy plants."  Id.  The similarity of such provisions, the court found, implicates Section 7(e)(7) of the FLSA, which excludes such premiums from the "regular rate" when that "'premium rate is not less than one and one-half times the rate established in good faith by contract or agreement for like work performed during such workday or workweek.'"  Id. (quoting 29 U.S.C. § 7(e)(7)).  "Section

---

[2]     For clarification, the hypothetical posits that the wage on which the overtime rate gets calculated is the minimum wage of $3.50 an hour, even though the employee actually earns $10 an hour. $10 an hour would yield an overtime rate of $15 an hour.

7(e)(6)," the court noted, "contains a similar provision for weekend work."  Id.  Under this Section, the court found, "if a baker's regular weekday rate were $10 and the rate for Sunday work were $15, the Sunday premium would not be figured back into the "regular rate," and time-and-half pay for overtime during the week would remain at $15."  Id.  If, however, "the Sunday rate were $14, the extra pay would be included in the 'regular rate,' raising the overtime rate for both weekdays and Sundays."  Id.  Thus, the court found that, while the $12 payments were not exempt from the regular rate under Section 7(e)(2), they could be subject to the restrictions under Section 7(e)(7), and could also be subject to other limitations in other parts of the statute.  In the end, the Seventh Circuit found that "[a]ll we hold today is that § 7(e)(2) does not keep the $12 credits out of the 'regular rate.'"  Id.

This long explanation demonstrates that, to the extent that Defendant cites Reich for the proposition that Section "207(e)(2) excludes 'payments that do not depend at all on when or how much work is performed'" from the regular rate of pay, Defendant misreads that case.  The Seventh Circuit explicitly found that some such payments could be considered part of the regular rate of pay for the purpose of calculating the overtime rate under that provision, though other provisions in Section 207(e) might call such a finding into question.  Simply stated, Reich does not support Defendant's position.

Defendant also cites to Minizza v. Stone Container Corp. Corrugated Container Div. East Plant, 842 F.2d 1456 (3d Cir. 1988).  In Minizza, union paperworkers sued their employer, alleging an FLSA violation when the employer "exclud[ed] certain lump sum payments they received pursuant to the terms of collective bargaining agreements between the Union and the employers from their regular rate of compensation in calculating overtime pay."  Minizza. 842 F.2d at 1458.  The funds in question came out of an agreement between the plaintiffs' union and their employers.  Id.  The parties

negotiated a new contract that included "the payment in the first year of the agreement of a lump sum of $750,000, payable on July 1, 1984, and additional payment in the second year of the contract of $500,000, payable on July 1, 1985." Id.  An employee who had worked for three months prior to July 1, 1984 was eligible for a share of the $750,000 payment. Id.  An employee who had "six months active status prior to the payment date" was eligible for payments from the second fund. Id.  Workers who were "on long-term disability or lay-off returning within 12 months of the bonus date received a pro-rata share." Id.  "The lump sum payments were negotiated as a trade-off for wage increases and also served as an inducement to the employees to ratify the agreement, given the employers' minimal wage concessions and insistence on including medical deductibles." Id.  The parties agreed that bonus "amounts would not be included in wages for purposes of calculating holiday pay, worker's compensation premiums, FICA, FUTA, and overtime." Id.  Later, however, a union lawyer argued that the payments should be part of the base rate for calculating overtime. Id.  The employers disagreed. Id.  Litigation and a trial occurred. Id.  The district court concluded "that the payments did not fall within any exclusion contained in the FLSA, and that the employers should therefore have included those payments in overtime calculations." Id. at 1459.

The employers appealed. Minizza. 842 F.2d at 1459.  The Third Circuit concluded that the payments were exempt from calculation of the regular rate of pay. Id.  The district court had found that the payments "were compensation for hours of employment" because evidence from contract negotiations showed "that the payments were tied to proposals for" increased pay "and concluded that the payments were made in lieu of wage increases." Id.  Though the issue of "a trade-off of the payments for a smaller increase in wages" would not be "irrelevant to the issue before the district court, it is of little help in settling the ultimate question whether the payments may be excluded." Id.

13

Any compensation paid indirectly to a worker, after all, "comes at the expense of wage increases." Id. at 1459-60. "Employers have a finite amount to spend for the labor component of their product or service." Id. at 1460. The statute in question excludes certain similar types of payments, thus the mere existence of the payments "does not necessarily preclude their falling within the language of the exclusions" in Section 207(e). Id.

The Third Circuit also rejected the disrict court's conclusion that "the fact that there was a time-of-service related work prerequisite for receiving the payment" as evidence that the employment was compensation for employment. Minizza. 842 F.2d at 1460. The Third Circuit found that "the fact that the entitlement to those payments was dependent on an employee's having been with the employer for a certain period of time preceding the payment does not support the conclusion that the payments were compensation for employment." Id. The eligibility requirement for the payments did not depend on "how many hours an employee worked during" employment, "nor how many hours he might work in the future. The employee could even terminate his employment immediately upon receiving the payment and retain the payment." Id. Moreover, the payments were limited to only some employees in an effort to save money for the employers. Id. Had the payments been made to all workers, the analysis as to the payments "would be focused solely on" their "character" and the court saw "no reason why we should come to a different conclusion where the evidence reflects that requirements were imposed solely for reasons of cost containment, and were not an attempt to tie payments to compensation for services rendered." Id.

The Third Circuit thus found that "[i]n light of the evidence that the eligibility requirements were not meant to serve as compensation for service, but rather to reduce the employers' costs, and considering that the eligibility terms themselves do not require specific service," such terms "do not

lend support to the conclusion that the payments were compensation for employment." Id. at 1460-61.

The district court had also concluded that the payments were not similar to the type of payments listed in Section 207(e)(2). Minizza. 842 F.2d at 1461. The Third Circuit pointed to the federal regulation "clarifying" that Section:

> Section 7(e)(2) also authorizes exclusion from the regular rate of "other similar payments to an employee which are not made as compensation for his hours of employment." Since a variety of miscellaneous payments are paid by an employer to an employee under peculiar circumstances, it was not considered feasible to attempt to list them. They must, however, be "similar" in character to the payments specifically described in section 7(e)(2). It is clear that the clause was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.

Id. (quoting 29 C.F.R. § 778.224(a) (1987)). The district court concluded that the payments in question were not similar to any of those listed in Section 207(e)(2). Id. The district court saw a similarity only to "pay for idle hours or reimbursements for work-related expenses" and rejected that analogy. Id. The Third Circuit disagreed, finding that the district court had erred "because it focuses the analysis on the specific type of payment rather than whether the type of payment is compensation for hours worked or services rendered." Id. The Third Circuit found this an error because "[t]he phrase 'other similar payments . . . not made as compensation for hours of employment' does not mean just other payment for idle hours or reimbursements," the sorts of payments used as an example in the statute, "but payments not tied to hours of compensation, of which payments for idle hours and reimbursements are only two examples." Id. The Third Circuit found the hours in question excluded under Section 207(e)(2) "because they are similar in character to the other payments set forth in that

section; that is, they are not payments relating to hours of employment or service." Id. at 1462. The payments instead were "nothing more or less than an inducement by the employers to the employees to ratify the agreement on the terms proposed by the employers." Id.

Defendant contends that both of these cases support the proposition that, because there was no explicit relationship between the hours worked and the cash payments in lieu of health benefits, this Court should find that Section 207(e)(2) exempts those payments from calculation as part of the base rate for overtime purposes. Plaintiffs, however, counter with a Ninth Circuit case, Flores v. City of San Gabriel, 824 F.3d 890 (2d Cir. 2016). In Flores, the plaintiffs, police officers, argued that the City of San Gabriel, California, violated the FLSA when "the City failed to include payments of unused portions of the Plaintiffs' benefits allowances when calculating their regular rate of pay" for overtime purposes. Flores, 824 F.3d at 894. In response, the City of San Gabriel argued that "cash-in-lieu" of benefits was exempt from that calculation because of two FLSA provisions.

The City of San Gabriel offered workers a "Flexible Benefits Plan[.]" Id. at 896. The plan provided "a designated monetary amount to each employee for the purchase of medical, vision, and dental benefits." Id. Workers were required to use some portion of the fund to buy "vision and dental benefits," but they could "decline to use the remainder of the these funds" to buy health insurance if they provided "proof that the employee has alternate medical coverage, such as through a spouse." Id. An employee who opted out of funds for health insurance "may receive the unused portion of her benefits allotment as a cash payment added to her regular paycheck." Id. Over the three-year period in question, employees who declined medical coverage received more than $1000 a month in payments in lieu of benefits. Id. The payments had a separate line on the employees' paychecks, and they paid taxes and other requirements, like Medicare taxes, on the funds. Id. The City of San

Gabriel did not include the value of such payments in calculating the regular rate of pay of those who received them, and did not include that income in determining rates of overtime pay.  Id.  The district court agreed with the plaintiffs that this practice violated the FLSA, and the City of San Gabriel appealed.  Id. at 897.

On appeal, the City argued that Section 207(e)(2) excluded the cash-in-lieu of benefits from inclusion in the regular rate of pay for purposes of calculating overtime.  Id.  The City argued that the phrase "'other similar payments to an employee which are not made as compensation for his hours of employment'" allowed an employer to "exclu[de] . . . any payments that do not depend on when or how much work the employee performs."  Id. at 898.  The City did not contend that the payments did not qualify as compensation but instead argued that "because its payments of the Plaintiffs' unused benefits are not tied to hours worked or amount of services provided by the Plaintiffs," they could be excluded under Section 207(e)(2).  Id.  The Ninth Circuit found the issue "a close question," but decided "that the City's cash-in-lieu of benefits payments may not be excluded under § 207(e)(2) and therefore must be included in the calculation of Plaintiffs' regular rate of pay."  Id.

The Ninth Circuit pointed to the regulation cited above for help in interpreting the phrase "other similar payments to an employee which are not made as compensation for his hours of employment" and rejecting the City's contention that payments must be connected to particular hours worked or services provided to avoid exclusion under Section 207(e)(2).  Id.  The Ninth Circuit noted that the regulation related to "'other similar payments'" defined such payments to include "amounts paid to an employee for the rental of her vehicle; loans or advances made to the employee; and '[t]he cost to the employer of conveniences furnished to the employee such as parking space, restrooms, lockers, on-the-job medical care and recreational facilities.'" Id. (quoting 29 C.F.R. § 778.224(b)).

17

This definition, the Ninth Circuit found, "is thus directly contrary to the interpretation of the 'other similar payments' clause that the City argues here." Id.  A payment that "is generally understood as compensation for work" may not be excluded under the regulation, "even though the payment is not directly tied to specific hours worked by the employee." Id.  Payments cited in the regulations as non-exempted, like "bonuses or room and board, are commonly considered to be compensation even though such payments do not fluctuate in accordance with particular hours worked by an employee." Id. at 898-99.

Citing to other Ninth Circuit case law, the Ninth Circuit pointed out that "[w]e have similarly interpreted the 'other similar payments' clause to focus on whether the character of the payment was compensation for work." Id. at 899 (citing Local 246 Utility Workers Union of America v. Southern California Edison Co., 83 F.3d 292 (9th Cir. 1996)).  The Ninth Circuit concluded that "the question of whether a particular payment falls within the 'other similar payments' clause does not turn on whether the payment is tied to an hourly wage, but instead turns on whether the payment is a form of compensation for performing work." Flores, 824 F.3d at 899.

The City had not argued that the payments were not compensation, but instead argued that they were excluded "because they are not compensation for hours of work performed or for an amount of services provided." Id.  The court would have rejected that argument anyway, since the payments in question were not similar to the payments the court had previously found excluded, like "leave buyback payments" and lunch periods. Id. (citing, in turn, Balestrieri v. Menlo Park Fire Prot. Dist., 800 F.3d 1094, 1103-104 (9th Cir. 2015) and Ballaris v. Wacker Siltronic corp., 370 F.3d 901, 909 (9th Cir. 2004)).  "The payments at issue here are not similar to payments for non-working time or reimbursement for expenses." Flores, 824 F.3d at 900.  In addition, the Ninth Circuit found, the fact

that the FLSA contained another exemption provision "specifically addressing benefits, §207(e)(4),

suggests that payments related to benefits would otherwise be considered compensation." Id.  The

existence of that provision indicated to the court "that Congress did not understand § 207(e)(2)'s

'other similar payments' clause to already exempt payments related to benefits." Id.  This section was

not dispositive, since "that a payment cannot be excluded under one subsection does not imply that

every other subsection is inapplicable," but "the inclusion of a separate exemption addressing benefits

. . . provides insight into the intended scope of" Section 207(e)(2). Id.

The Court is more persuaded by Plaintiff's arguments on this matter.[3]  First, the cases cited by

Defendant do not necessarily stand for the proposition that Defendant appears to claim that they do:

that the Section 207(e)(2) exemption applies to all payments made to workers that are not explicitly

based on hours worked or the work performed.  As explained above, the Seventh Circuit's decision in

Reich rejects that position.  The Third Circuit's decision in Minizza comes closer to such a finding

but, as the Ninth Circuit in Flores explains, the Third Circuit applied the exemption to the payments

because they did not amount to compensation for work but were instead an inducement to agree to a

contract that benefitted the employers in other ways.  See Flores, 824 F.3d at 900 (recognizing that

---

[3]      The Ninth Circuit in Flores rejected the City of San Gabriel' s argument that the two
cases Defendant here cites counsel a different result.  More specifically, the Ninth Circuit read the
Seventh Circuit's opinion in Reich to support the position that the payments in lieu of benefits were
not exempted, finding that "the Seventh Circuit's reading of the statute is not so different from our
own–both look to whether the payment at issue is generally understood as compensation to the
employee, not whether the payment is tied to specific hours worked by the employee." Flores, 824
F.3d at 899.  Moreover, while the Ninth Circuit recognized that the Third Circuit's opinion in
Minizza contained a "greater focus on the direct tie to hours worked or services provided," which
"hews more closely to the interpretation" urged by the defendant, the Ninth Circuit rejected the
analogy that the City of San Gabriel drew. Id. at 900. The Ninth Circuit noted "because the
purposes of the payments in Minizza was to secure the employees' ratification of a collective
bargaining agreement, such payments are not compensation for work performed," it would reach the
same conclusion as the Third Circuit had. Id.

Minizza sought a more direct tie to hours worked or services provided but noting that, "because the purpose of the payments in Minizza was to secure the employees' ratification of the collective bargaining agreement, such payments are not compensation for work performed, and would similarly be excluded under our interpretation of § 207(e)(2)"). As a result, such payments were compensation for something other than work.

Here, the Court agrees with the Ninth Circuit in Flores that the proper interpretation of "other similar payments to an employee which are not made as compensation for his hours of employment" does not include the payments made in lieu of compensation. The Flores decision is the only case cited by the parties that directly interprets the statute in light of such payments. The Court is persuaded by the reasoning in Flores that concludes that compensation tied to the performance of the work is not subject to the exemption. This is because the exemption refers to three categories of exemption: "[1] payments made for occasional periods when no work is performed . . . [2] reasonable payments for traveling expenses, or other expenses incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and [3] other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2) (alterations inserted). The payments here do not fit in either of the first two categories. The language of the third category requires that the payments be "similar" to those in the first two categories, and they must not be "made as compensation for his hours of employment." The Court agrees with the Ninth and Seventh Circuit's findings that "compensation for hours of employment" does not necessarily require a direct correlation between hours or amount of work and the payment. Further, the Court agrees that the proper question is whether the payment's character relates to compensation for work performed and not some other reason for compensation, such as repayment for expenses

20

incurred.  Here, the payment is a way of paying health-care benefits that are allegedly part of the contract providing compensation for employment.  The payment goes to employees who make a choice permitted under the parties' contract to obtain health care from a source other than directly from their employer.  Both those employees and those who choose to opt in to the health insurance program obtain the benefits because of the work that they perform.   Such a payment is not similar to the other categories of payments and, like the payments that go to third parties for health care, is compensation for the performance of work.

The Court therefore finds, after drawing all reasonable inferences in Plaintiffs' favor, that they have alleged facts plausibly suggesting that Defendant used the wrong basis for determining Plaintiffs' rate of overtime compensation because Defendant did not include the payments in its calculations.  The Court notes, however, that no evidence has been presented to it as to the mechanism for and timing of those payments.  Such information may be material to any later determination of whether the payments are exempted.  At this point, however, the motion will be denied.

**2.    Public Policy Considerations and Legislative Intent**

Without citing any case law for the proposition, Defendant also argues that public policy considerations and the legislative intent of the FLSA counsel against finding that Section 7(e)(2) permits consideration of the lump-sum payments in question as part of the regular pay.  Eliminating the cash-in-lieu-of-benefits provision, Defendant argues, would undermine employer's incentive to offer that feature to employees and eliminate a substantial benefit for those employees.  Including those payments in the regular rate of pay, Defendant argues, would also force employers to pay "overtime wages for hours they did not actually work."  Thus, Defendant argues, public policy would

be served by permitting employers to offer this option without financial penalty.

The Court is not persuaded by this argument. The Court fails to see how applying that provision would require Defendant to pay overtime for hours not worked.  The exemption points to the rate at which an employer pays for overtime work that an employee undertook.  The exemption does not expand the hours of work that are eligible for overtime pay.  As to the possibility that the reading Section 7(e)(2) in the way that Plaintiffs suggest will cause municipalities like Defendant to eliminate payment in lieu of benefits as an option for employees, the Court recognizes the possibility. Cities and unions will certainly need to take the implications of Section 7(e)(2) into consideration when negotiating CBAs, if they have not done so since the Ninth Circuit issued Flores in 2016.  Such public policy considerations are not a component of interpreting the plain language of a statute, however.  Those issues are ones for the legislators who write the statutes, not the courts.

Defendant also argues that the plain language and intent of the statute is that the compensation must be tied to the employees' hours of employment.  "'It is elementary that the meaning of a statute must be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms.'" Farley v. Metro-North C. Railroad, 865 F.2d 33, 35 (2d Cir. 1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).  The Court agrees with the Seventh and Ninth Circuits, which have concluded that the plain language of Section 7(e)(2) does not exclude the payments in lieu of benefits.  Whatever the costs to Defendant and the potential impact on further attempts to offer such benefits, the Court is compelled to enforce the language of the statute.  Again, such considerations are ones for the legislature, not the courts.[4]

---

[4]  The Flores court explained as follows:

(continued...)

### C.    29 U.S.C. § 207(e)(4)

Finally, Defendant argues that another portion of the FLSA exempts the payments made in lieu of benefits from being included in the regular rate of pay when calculating overtime compensation for Plaintiffs.  Replying on 29 U.S.C. § 207(e)(4), Defendant argues that, because the payments were part of providing health insurance, they should not be counted as part of the overtime pay rate calculations.  Defendant further cites interpretative guidance from the Department of Labor in support of its argument that the payments made in this instance qualify for the exclusion.  In response, Plaintiffs argue that the language of the statute, which provides that the exemption applies to payments made to third parties, undermines Defendant's argument here: the payments, as alleged in the Complaint, were made to Plaintiffs, not to some other party.

Section 207(e)(4) of the FLSA continues enumerating the exemptions to the regular rate of pay for employees listed in the rest of Section 207(e).  Section 207(e)(4) provides that the regular rate does not include the following:

> (4) contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees[.]

---

[4](...continued)
> The City warns us that a ruling in favor of the Plaintiffs in this case will encourage municipalities to discontinue cash-in-lieu of benefits payment programs due to the consequent increase in overtime costs to the detriment of municipal employees. As we have observed before, such arguments are "more appropriately . . . made to Congress or to the Department of Labor, rather than to the courts." Bratt v. Cty. of Los Angeles, 912 F.2d 1066, 1071 (9th Cir. 1990). The potential effect of our ruling on municipal decision-making does not give us license to alter the terms of the FLSA. Accordingly, we affirm the district court's ruling that the City's cash-in-lieu of benefits payments are not properly excluded under § 207(e)(2).

Flores, 824 F.3d at 901.

29 U.S.C. § 207(e)(4).  Defendant also points to an interpretive guideline from the Department of

Labor that addresses the meaning of the exemption in Section 207(4)(e).  See 29 C.F.R. §

778.215(a)(1-5).[5]  The guideline provides five "conditions" that must be met "for an employer's

contribution to qualify for exclusion from the regular rate under section 7(e)(4) of the Act[.]" 29

C.F.R. § 778.215(a).

As explained above, Plaintiffs' Amended Complaint alleges that an employee who opts out of

health-care coverage receives a cash payment from Defendant.  Amend. Cmplt. at ¶ 15.  An eligible

employee who is married and opts out of family coverage receives $5,000 annually from Defendant.

An eligible worker who is not married and opts out of single coverage receives a $2,500 annual

payment.  Id.  Defendant pays this money directly to the employee who opts out.  Id. at ¶ 16.

Plaintiffs have opted out on their health-care coverage and received cash from Defendant.  Id. at ¶ 17.

Section 207(e)(4) provides that the exemption applies to situations involving "contributions

irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for

providing old-age, retirement, life, accident, or health insurance or similar benefits for employees."

29 U.S.C. § 207(e)(4).  Plaintiffs allege that Defendant here made payments directly to them instead

of making "contributions . . . to a trustee or third person[.]"  Id. (emphasis added).  Under a fair

reading of the plain language of the statute, then, the payments in lieu of benefits are not covered by

---

[5]       The Third Circuit has pointed to 29 C.F.R. § 778.1 for the conclusion that Section
"778.215(a)(5) is an interpretative guideline, issued on the advice of the Solicitor of Labor and
authorized by the Secretary, not an official regulation promulgated after notice-and-comment
rulemaking."  Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 186 (3d Cir. 2000).  As
Defendant cites to all of the guidelines that are part of the section in which Section 778.215(a)(5) is
contained, the Court will treat all of that section as part of a set of guidelines, rather than formal
regulations.

this exemption.  The Labor Department's interpretation of the statute provides no help to Defendant.

That interpretation provides that "[t]he employer's contributions must be paid irrevocably to a trustee

or third person pursuant to an insurance agreement, trust or other funded arrangement.  The trustee

must assume the usual fiduciary responsibilities imposed upon trustees by applicable law."  29 C.F.R.

§ 778.215(a)(4).  Plaintiffs' Amended Complaint alleges that the payments were not made to third

party or trustee with a fiduciary responsibility towards an insurance plan, but to the individual

Plaintiffs without any constraint or obligation to spend for insurance purposes.  The payments to

Plaintiffs are not exempt as contributions under Section 207(e)(4).

The Court's conclusion here finds support in the Ninth Circuit's decision in Flores, as well as

in a subsequent case that applied Flores, Sanders v. Cnty. of Ventura, 87 F.4th 434 (9th Cir. 2023).  In

Flores, the Ninth Circuit concluded that "[b]ecause the City pays the unused benefits directly to its

employees and not 'to a trustee or third person,' its cash-in-lieu of benefits payments cannot be

excluded under § 207(e)(4)."  Flores, 824 F.3d at 901 (quoting 29 U.S.C. § 207(e)(4); see also, Local

246 Util. Workers Union v. Southern Cal. Edison co., 83 F.3d 292, 296 (9th Cir. 1996) (finding that

"supplemental payments" made to employees were not exempt under Section 207(e)(4) because

"Section 207(e)(4) deals with contributions by the employer, not payments to the employee.").  The

Ninth Circuit reads Section 207(e)(4) in the same way as this Court.

Meanwhile, in Sanders, the plaintiffs were employees of county that offered a health-care plan

that permitted employees to opt out of coverage.[6]  Sanders, 87 F.4th at 436.  Employees who opted

---

[6]        The plan was rather complicated.  As the Ninth Circuit explained,

The County manages health benefits for union and non-union employees
alike through its Flexible Benefits Program. As part of this "cafeteria plan,"

(continued...)

out of the program would receive a "Flex Credit" for coverage on their paycheck, but had to "pay an opt-out fee." Id. On the paycheck, an employee would receive the Flex Credit payment after the County subtracted the amount of the opt-out fee. Id. A small portion of these opt-out fees were directed towards providing health services to County employees, and the remainder was "remitted to the unions, which put those fees toward the amounts that other union members must pay for their insurance through the union-sponsored plans." Id. at 437. For workers who were not part of a union, the opt-out fees were "remitted to the County's medical insurance carriers to fund the County-sponsored plans." Id.

Plaintiffs in Sanders sued, alleging that the County violated the FLSA by failing to include the opt-out fees as part of their regular rate of pay in calculating overtime pay. Id. The question was not whether the County had violated the FLSA by failing to include money paid directly to plaintiffs in calculating the regular rate of pay: "[t]he County here complied with" the requirement in Flores that money paid directly to workers who opted out of a benefits program be considered regular pay when "it treated the cash it paid to plaintiffs—the difference between the Flex Credit and the opt-out fee—as part of plaintiffs' regular rate of pay when calculating overtime compensation." Id. at 438. The fees

---

[6](...continued)

the County provides its employees every pay period with a Flexible Benefit Allowance, also known as the "Flex Credit," which employees may use to purchase health benefits on a pre-tax basis. The amount of the Flex Credit for union members is set through negotiation between the County and the unions. If the premium for an employee's chosen health insurance is more than the Flex Credit, the balance of the premium owed is deducted from the employee's pre-tax earnings. If the premium is less than the Flex Credit, the remainder is paid to the employee in cash as taxable earnings. Employees can also waive participation in the Flexible Benefits Program altogether, in which case they do not receive the Flex Credit.

Sanders, 87 F.4th at 436.

26

in <u>Sanders</u> were different, however, because "the opt-out fee does not function like the cash payment in <u>Flores</u>.  Indeed, the opt-out fee is not provided to the plaintiffs in cash at all, and employees have no right under the program to access that amount as cash-in-lieu."  <u>Id.</u>  After concluding that the payments in question went to a "bona fide" benefits program, the Ninth Circuit found "that the County properly excluded the Flex Credit opt-out fee from the plaintiffs' regular rate of pay under 29 U.S.C. § 207(e)(4)."  <u>Id.</u> at 442.

In this case, Plaintiffs' allegations, accepted as true, are that Defendant paid the opt-out fees directly to Plaintiffs, not to any third party.  Under the plain language of Section 207(e)(4) and the persuasive reasoning the opinions described above, the Court finds that Plaintiffs' have stated a claim that failing to include the opt-out payments in their regular rate of pay violated the FLSA.  The Court therefore denies this aspect of Defendant's motion as well.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss (dkt. # 28) is **<u>DENIED</u>**.

Dated: May 31, 2024
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge